# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| ALYSE SMITH and RYAN SMITH, on behalf of themselves and all others similarly situated, | Civil Action No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| WEYERHAEUSER COMPANY, | |
| Defendant. | |

Plaintiffs Alyse Smith and Ryan Smith (together, "Plaintiffs"), through their undersigned counsel, on behalf of themselves and all others similarly situated, bring this action against Defendant Weyerhaeuser Company ("Weyerhaeuser" or "Defendant"). In support hereof, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this class action against Weyerhaeuser individually and on behalf of all persons and entities who own or who have signed contracts to purchase homes or other structures located in the State of Colorado and across the United States in which Weyerhaeuser's TJI Joists with Flak Jacket Protection (the "Joists") are or were installed (the "Class").

2.      This lawsuit arises out of damages sustained by Plaintiffs and the Class that were proximately caused by Weyerhaeuser's defective Joists used in the construction of Plaintiffs' and Class members' homes and other structures.

3.      Weyerhaeuser manufactured the defective Joists, and since at least December 2016, sold and distributed the Joists throughout Colorado and the United States for installation in homes and other structures. At all times, Weyerhaeuser marketed and represented the Joists to include

"[a]ll the quality and cost-efficiency you expect from [Weyerhaeuser's] Trus Joist engineered lumber products." Weyerhaeuser touted the Joists to be "[e]xtremely durable," "not requir[ing] special handling or storage." Weyerhaeuser sold the Joists with a fully transferable warranty that warranted against "manufacturing defects" and remained in effect for "the lifetime of the structure."

4.     Despite these representations that were uniformly made to all customers, however, the Joists are defectively designed and defectively manufactured, such that they emit noxious and toxic gases that are harmful to humans. The Joists' "Flak Jacket" coating includes a formaldehyde-based resin that results in the "off-gassing" of formaldehyde far in excess of acceptable levels and causes other serious air quality issues.

5.     Short-term human exposure to formaldehyde for periods as short as 15 minutes has been shown to cause respiratory irritation, headaches, coughing, dizziness, and nausea. Chronic and long-term exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia. Formaldehyde also causes burning eyes, nose and throat irritation and joint pain. It has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals and poses a particularly acute risk to children.

6.     The defective nature of the Joists is so severe that Plaintiffs' and Class members' homes and other structures are largely uninhabitable. The Joists require immediate repair, removal and/or replacement.

7.      Recognizing the serious, dangerous problems with the Joists, Weyerhaeuser "has halted all production, sales and shipments of the product."[1] Occupants of homes containing the Joists have been advised to vacate their residences.

8.      Plaintiffs seek to recover, for themselves and the Class, all costs associated with repairing, removing and/or replacing the Joists, and all costs of repairing any related damage to other property. Plaintiffs and the Class also seek damages for diminution of the value and future value of their homes, and all out-of-pocket expenses related to dealing with these problems, including, without limitation, delays in settlement and relocation expenses, as well as time spent away from work to address these issues. Plaintiffs also seek injunctive relief requiring Weyerhaeuser to pay for ongoing monitoring of the formaldehyde levels in Plaintiffs' and Class Members' homes and for appropriate medical monitoring. Plaintiffs further seek a Court Order requiring Weyerhaeuser to modify its warranty claims process to uniformly provide relief in accordance with all of its obligations under the law, and a declaration from the Court concerning the defective nature of the Joists.

## **PARTIES**

### *Plaintiffs Alyse Smith and Ryan Smith*

9.      Plaintiffs Alyse Smith and Ryan Smith are citizens of Colorado.

### *Defendant Weyerhaeuser Company*

10.     Defendant Weyerhaeuser Company ("Defendant" or "Weyerhaeuser") is a Washington corporation with its principal place of business located at 220 Occidental Ave. S., Seattle, WA 98104. Weyerhaeuser is one of the world's largest forest products companies,

---

[1] http://investor.weyerhaeuser.com/2017-07-18-Weyerhaeuser-issues-statement-regarding-TJI-R-Joists-with-Flak-Jacket-R-Protection (last visited 8/1/17).

controlling 13.1 million acres of timberlands, primarily in the United States, and managing additional timberlands under long-term licenses in Canada. In 2016, Weyerhaeuser generated over $6.3 billion in sales.

## THE SMITHS' EXPERIENCE WITH THE JOISTS

11.     On May 30, 2017, the Smiths closed on their home in Aurora, Colorado. They moved in the same day, with their two children, ages six and seven.

12.     The Smiths home was constructed using the defective Joists, which are present in the Smiths' unfinished basement.

13.     During the first two months while the Smiths lived in their new house, they stored all of their children's toys in the basement and the children used the basement as their play area.

14.     The Smiths' builder has informed the Smiths that the Joists in their basement are off-gassing and releasing formaldehyde fumes into their home.

15.     The builder also gave the Smiths a copy of a recent notice from Weyerhaeuser telling them not to use the basement at all, and telling them to keep the door between the basement and the rest of the house closed at all times. The notice also recommended keeping all basement windows and exterior doors open, and also suggested adding mechanical ventilation.

16.     The letter also noted that Weyerhaeuser "cannot guarantee that following any particular protocol will avoid all risks of exposure."

17.     The Weyerhaeuser notice also indicated that no workers should be in any basement with the Joists for more than five minutes at a time. The notice said that total daily exposure should not exceed thirty minutes, and indicated that each five minute visit should be separated by thirty minutes.

18.     The Smith family, including their children, regularly spent more time in the basement than the notice said would be safe for adult construction workers.

19.     The Smiths' daughter, whose bedroom is closest to the basement, has developed a persistent cough which the Smiths believe is due to formaldehyde off-gassing from the Joists.

20.     Plaintiff Alyse Smith has experienced burning and tearing in her eyes, and other related physical symptoms, which she believes are due to formaldehyde off-gassing from the Joists.

21.     The Smiths intend to move from their home to a hotel. This relocation is a major inconvenience as it comes only months after the Smiths moved into their new home, and days before their children are scheduled to begin school. The Smiths are also incurring consequential and ancillary costs related to the relocation and dealing with the problems with the TJI Joists.

22.     The Smiths' home is now uninhabitable. To the extent it could ever be resold, the presence of the defective TJI Joists and resulting problems, as set forth herein, even if remediated, will diminish the home's value.

23.     The Smiths are concerned about how their formaldehyde exposure has affected them, what its ongoing impact on their family's health will be, and what the financial impact of this problem will be on their family, including both the short-term costs of relocation and repair/remediation, but also the long term expenses of diminished home value and medical monitoring.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d). The matter in controversy in this class action exceeds $5,000,000.00 exclusive of interest and costs,

and Plaintiffs and members of the Class are citizens of a state other than the state in which Defendant is incorporated and has its primary place of business.

25.     Venue is proper pursuant to 28 U.S.C. §1391(b) because: (a) a substantial part of the events giving rise to this action occurred in this District; and (b) the property that is the subject of this action is located in this District.

26.     As a result of Defendant marketing, distributing, promoting, and selling the Joists throughout Colorado, either directly or indirectly through third parties or related entities, Defendant obtained the benefits of the laws of Colorado and profited from Colorado commerce.

27.     Defendant conducted systematic and continuous business activities throughout the State of Colorado and otherwise intentionally availed itself of the market in Colorado through the promotion, marketing and sale of its products, including the Joists. The Joists have been installed in at least hundreds of homes throughout Colorado.

## SUBSTANTIVE ALLEGATIONS

**I.     Weyerhaeuser Misrepresented The Joists' Characteristics And Breached Its Warranties To The Class**

28.     Weyerhaeuser's TJI Joists with Flak Jacket Protection are part of its Trus Joist floor system, which, according to Weyerhaeuser, is a result of "[m]ore than 50 years of wood research and technology." Weyerhaeuser has represented that "a survey of builders" determined that "TJI joists were the number one brand in quality, familiarity and usage."

29.     Flak Jacket is a Weyerhaeuser "proprietary, factory-applied coating" that purportedly "enhances the joist's fire resistance."

30.     Weyerhaeuser owns and controls the formula and specifications for the Flak Jacket coating, and at all times oversaw and was responsible for the development and manufacture of the TJI Joists with Flak Jacket Protection.

31.     Since at least December 1, 2016, Weyerhaeuser has coated the Joists with a Flak Jacket coating that includes a formaldehyde-based resin.

32.     Weyerhaeuser has sold or distributed the Joists throughout Colorado and the United States for installation in homes and other structures, including homes that reside families, senior citizens and children.

33.     Marketing materials obtained from Weyerhaeuser's own website represent that its Joists "offer the high-performance flooring [consumers] rely on with the fire-resistance that new regulations require," "do[] not require special handling," and are "backed by Weyerhaeuser support."

34.     Weyerhaeuser's sales brochures and marketing literature, that were widely distributed to building professionals who installed the Joists, and that were available to Plaintiffs and the Class at the time of sale, similarly tout the superior characteristics of the Joists.

35.     Plaintiffs and the Class, and their builders, relied on Weyerhaeuser's representations and advertising concerning the Joists when they purchased the Joists.

36.     Weyerhaeuser widely advertises that its Joists carry a lifetime warranty. Building professionals and consumers appropriately and reasonably interpret Weyerhaeuser's warranty and representations to mean that the product should not need to be replaced during the lifetime of a home or other structure in which the Joists are installed.

37.     Weyerhaeuser's lifetime warranty is attached hereto as **Exhibit A**. The warranty guarantees against "manufacturing defects for the lifetime of the structure." The warranty also states that "Weyerhaeuser will pay reasonable cost of labor and material for the repair or replacement of the covered Joists, not to exceed 3 times the original purchase price of the Joist."

38.     Given that the Joists need to be immediately repaired, removed and/or replaced, the Joists have not lived up to Weyerhaeuser's representations and warranties.

## II.     Weyerhaeuser's Joists Are Defective

39.     Because of a defect in the design, formulation, and manufacture of the Joists, the Joists emit excessive levels of noxious and toxic gases. These dangerous gases render the homes and other structures in which the Joists are installed uninhabitable, and pose a serious safety risk to those who enter these home and other structures.

40.     These defects have manifested themselves uniformly in the Joists installed in the homes and other structures of Plaintiffs and the Class.

41.     At present, there are thousands of Class members, including Plaintiffs, whose homes and other structures incorporate Weyerhaeuser's defective Joists and who have observed or otherwise experienced the uniform defects described herein.

42.     Some of the homes and structures at issue have already been subject to testing by builders and customers, that evidences the defect with the Joists, as described herein.

43.     As a direct result of the readily observable and uniform defects inherent in the Joists, Weyerhaeuser has halted all production, sales and shipments of the Joists and now refers to the Joists as "temporarily discontinued."

## III.     The Remedies Provided By Weyerhaeuser's Warranty Are Inadequate

44.     Weyerhaeuser's warranty is grossly inadequate considering the uniform serious problem with the Joists and the immediate safety risks they present to humans. Weyerhaeuser's warranty purportedly limits Plaintiffs' and Class members' recovery to the "reasonable cost of labor and material for the repair or replacement of the covered Joists, not to exceed 3 times the

original purchase price of the Joist." In fact, the repair, removal and/or replacement of already-installed Joists costs far in excess of three times the purchase price of the Joists alone.

45.     Weyerhaeuser's failure to appropriately address on a Class-wide basis the defects inherent in its Joists, that have foreseeably resulted in the problems described herein, constitutes a breach of its express warranties to Plaintiffs and the Class. Moreover, Weyerhaeuser's affirmative representations as to the quality of its defective Joists constitute an actionable misrepresentation of material fact.

46.     Weyerhaeuser warranted and advertised to contractors, subcontractors, Plaintiffs, and the Class, the quality of its Joists even though it reasonably should have known that the Joists were defectively designed and manufactured.

47.     As a direct and proximate result of Weyerhaeuser's Joists being installed in the homes and other structures of Plaintiffs and the Class, Plaintiffs and the Class have suffered damages, in that the Joists have emitted and will continue to emit noxious and toxic gases that make people sick and render the homes and other structures uninhabitable.

48.     To the extent that Weyerhaeuser's warranty purports to limit or eliminate certain contractual rights afforded to Plaintiffs (*e.g.,* on the type of recoverable damages or the ability to recover property damages and other types of damages), such limitations are unconscionable and unenforceable under the circumstances.

## IV.     The Remedies Purportedly Offered By Weyerhaeuser are Insufficient

49.     In a July 18, 2017 press release, Weyerhaeuser admitted the defective nature of the Joists was caused by the Joists' "Flak Jacket coating that included formaldehyde-based resin." In the same press release, Weyerhaeuser asserted that it was "working proactively with its customers to address this situation and will cover the cost to either remediate or replace affected joists."

However, its remediation and replacement options are insufficient and will not make Plaintiffs and the Class whole.

50.     For example, with respect to Weyerhaeuser's purported remediation option, Weyerhaeuser has proposed simply applying a paint coating to the Joists, which Weyerhaeuser asserts will bind the formaldehyde and reduce emissions. While Weyerhaeuser maintains that it has successfully tested this method, there is no proof that this technique is effective in the field, and based on consultation with experts, this proposed method of remediation (which would be a much cheaper fix by Weyerhaeuser) has already been rejected by professionals in the building trades. Even after submitting to this remediation method, Plaintiffs and Class members may still be exposed to harmful gases emitting from the Joists. Additionally, the value of the homes and other structures of Plaintiffs and the Class will be permanently diminished by the continued presence of the defective Joists.

51.     Likewise, Weyerhaeuser proposed replacement option also fails to adequately address and cover the numerous complications and ancillary costs involved. For example, Weyerhaeuser has told owners of homes with the defective Joists that they will be responsible for retaining their own engineers to confirm the structural integrity of homes once the Joists are replaced.

52.     Plaintiffs and Class Members deserve full compensation for the delay in their ability to occupy their homes, including, without limitation, reimbursement for the expense and inconvenience of having to deal with this issue, including, without limitation, finding alternative living arrangements on short notice, and all of the time and associated expenses.

53.     Class Members who have already moved into homes containing the Joists have been subjected to numerous other harms as a result of the defective Joists, including, without

limitation, headaches, stinging and tearing eyes, dizziness, nausea, coughing and wheezing, and asthma-type symptoms.

54.     In addition, formaldehyde is a known carcinogen, meaning it contributes to causing cancer in humans.

## CLASS ALLEGATIONS

55.     This action has been brought and may be properly maintained as a nationwide class action pursuant to Fed. R. Civ. P. 23, on behalf of the following class:

> All persons and entities who own or who have signed contracts to purchase homes or other structures located in the United States in which Weyerhaeuser TJI Joists with Flak Jacket Protection are or were installed (the "Class"). Excluded from the Class is Defendant and Defendant's legal representatives, assigns and successors.

56.     This action has also been brought and may be properly maintained as a Colorado class action pursuant to Fed. R. Civ. P. 23 on behalf of the Colorado Class defined as follows:

> All persons and entities who own or who have signed contracts to purchase homes or other structures located in the State of Colorado in which Weyerhaeuser TJI Joists with Flak Jacket Protection are or were installed (the "Colorado Class"). Excluded from the Class is Defendant and Defendant's legal representatives, assigns and successors.

57.     The Class and Colorado Class are collectively referred to below as the "Classes." Plaintiffs reserve the right to redefine the Classes prior to class certification.

58.     Members of the Classes are so numerous that their individual joinder is impracticable. While the precise number is unknown at this time, upon information and belief, both proposed Classes are comprised of hundreds or thousands of members. The true number of Class members is known by Defendant and discoverable through its books and records.

59.     There are numerous questions of law and fact common to Plaintiffs and the Classes, that predominate over any questions that may affect individual Class members, including, but not limited to:

a)      whether the Joists are defective;

b)      whether the Joists are subject to emitting formaldehyde-based and other harmful and/or toxic gases, and are not suitable for use as advertised, marketed and warranted;

c)      whether Weyerhaeuser knew or should have known of the defective nature of the Joists prior to putting them into the stream of commerce for purchase by Plaintiffs and the Classes;

d)      whether Weyerhaeuser properly and timely provided notice and advised all affected consumers about the problems with the Joists;

e)      whether Weyerhaeuser owed a duty to Plaintiffs and the Classes to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting, distribution, marketing, and sale of the Joists;

f)      whether Weyerhaeuser breached its duty to Plaintiffs and the Classes by designing, manufacturing, advertising, and selling to Plaintiffs and the Class members defective Joists, and by failing promptly to remove the Joists from the marketplace or take other appropriate remedial action;

g)      whether the Joists will continue to exhibit the defect over time;

h)      whether the Joists will continue to exhibit the defect over time despite proposed remediation remedies such as Weyerhaeuser's proposed "paint protocol";

i)      whether the Joists fail to perform in accordance with the reasonable expectations of ordinary consumers;

j)      whether the Joists fail to perform as advertised, marketed and warranted;

k)      whether Weyerhaeuser breached its express warranties to Plaintiffs and the Classes by advertising, marketing and selling defective Joists to Plaintiffs and the Classes;

l)      whether Weyerhaeuser breached its implied warranties to Plaintiffs and the Classes by advertising, marketing and selling Joists that were not of a merchantable quality, and that were not fit for the ordinary purpose for which they were sold;

m)      whether Plaintiffs and the Classes are entitled to compensatory damages, and the amount of such damages for the removal and replacement of the defective Joists;

n)      whether Plaintiffs and the Classes are entitled to consequential and ancillary damages relating to the defective Joists;

o)      whether Plaintiffs and the Classes are entitled to ongoing testing and monitoring of the formaldehyde levels in their homes and of their exposure to formaldehyde;

p)      whether Weyerhaeuser's representations regarding the quality of its Joists, and its omissions and concealment of facts to the contrary regarding the defective Joists, constitute violations of applicable consumer protection laws and other applicable statutes; and

q)      whether Weyerhaeuser should be required to notify all Class members about the defective Joists.

60.     Plaintiffs' claims are typical of the claims of the members of the Classes. As a result of the uniform defects inherent in the Joists' formulation, the defective Joists have caused Plaintiffs and all members of the Classes to suffer damages.

61.     Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting nationwide, multistate and state law consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action

vigorously on behalf of the Classes they represent, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse or antagonistic to those of the Classes.

62.     Plaintiffs and the members of the Classes have all suffered and will continue to suffer harm and damages as a result of Weyerhaeuser's conduct as described herein. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, the vast majority of Class members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Weyerhaeuser and be made whole. Class treatment of predominating common questions of law and fact is also superior to multiple individual actions, in that class treatment would conserve the resources of the courts and the litigants, and will further the efficient adjudication of Class members' claims.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY

63.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

64.     Weyerhaeuser marketed and sold its Joists into the stream of commerce with the intent that the Joists would be purchased by contractors, subcontractors and end-users for installation in homes and other structures owned and purchased by Plaintiffs and the Classes.

65.     Prior to filing this lawsuit, Plaintiffs provided written notice to Weyerhaeuser of the breach of warranty.

66.     Weyerhaeuser expressly warranted in writing that its Joists are well-suited as a building material with a useful life matching the lifetime of the structure in which the Joists are installed. For purchasers of the Joists or of homes and other structures with the Joists, these

14

warranties became part of the basis of the bargain and Plaintiffs and the Classes relied upon the representations and warranties.

67.     Pursuant to Weyerhaeuser's express warranty, Weyerhaeuser is to pay costs for repair or replacement of the defective Joists. In exchange for these duties and obligations, Weyerhaeuser received payment of the purchase price for the Joists from Plaintiffs and the Classes.

68.     Weyerhaeuser created additional express warranties for the Joists through its sales brochures, catalogs, website and marketing materials. These warranties have full force and effect, notwithstanding any limitations in the "limited warranties" from Weyerhaeuser.

69.     Weyerhaeuser made the express warranties to the ultimate consumers, including Plaintiffs and the Classes.

70.     The limitations and exclusions in Weyerhaeuser's warranties are unconscionable and unenforceable.

71.     The consequential or incidental losses sustained by Plaintiffs and the Classes are within the contemplation of the parties, and therefore should not be prohibited when such bargained for remedy fails of its essential purpose.

72.     Weyerhaeuser's purported "limited warranty" fails of its essential purpose in that it limits recovery to a multiple of the purchase price of the Joists themselves when adequate repair, replacement and/or removal of the Joists will cost far in excess of the limited amount.

73.     Because Weyerhaeuser's warranty fails in its essential purpose, Plaintiffs and the Classes are entitled to recover available damages.

74.     Weyerhaeuser's Joists were defective at the time they were acquired by Plaintiffs and members of the Classes, and they were defective at the time they were acquired by Plaintiffs' builders.

75.     Weyerhaeuser failed to perform as required under its purported warranties and breached said contracts and agreements by providing Plaintiffs and the Classes with Joists that were defective and unfit for their intended use and did not perform as promised, and failed to appropriately replace the Joists or otherwise provide relief.

76.     The Joists fall well short of the lifetime guarantee as their defective nature is evident immediately upon installation of the Joists or occupation of the structure.

77.     Weyerhaeuser breached its express warranties to Plaintiffs and the Classes by designing, manufacturing, marketing and selling Joists that were defective and not fit for their intended use as durable and long-term home building products. As detailed herein, the Joists did not perform as expressly promised and were fraught with uniform defects.

78.     Weyerhaeuser knew that its Joists were defective, yet continued to represent that they were free of defects. Plaintiffs and members of the Classes had no ability to detect the defect nor received notice thereof, and did not receive notice on a timely basis. Based on facts within its control, Weyerhaeuser knew or should have known of the defective nature of the Joists long before its July 18, 2017 press release.

79.     Plaintiffs and the Classes have relied on Weyerhaeuser's express warranties to their detriment.

80.     Weyerhaeuser's warranty coverage is inadequate to cover all of the costs of repairing, replacing and/or removing the defective Joists from the homes and structures of Plaintiffs and the Classes, and does not compensate Plaintiff and the Classes for any damages to their underlying homes and structures caused by the defective Joists, for their consequential and ancillary damages, and for the diminution in the value of their homes and structures.

81.     Weyerhaeuser is on actual notice of its breaches, as Weyerhaeuser noted in its own press release that the Joists are defective. In addition, builders and consumers across the United States have put Weyerhaeuser on notice of its breaches. Furthermore, Plaintiffs provided notice to Weyerhaeuser of its breaches prior to filing this lawsuit.

82.     As a result of Weyerhaeuser's breach of its express warranties, Plaintiffs and the Classes have suffered actual damages, in that they have purchased and installed in their homes and other structures Joists that are defective and not at all suitable for their intended purpose. These defects have caused and will continue to cause Plaintiffs and the Classes to expend substantial resources repairing and/or replacing their Joists and to address any collateral damages to their underlying homes and structures proximately caused by the defective Joists.

83.     Plaintiffs and the Classes reserve their right to seek all damages available by statute or law.

### COUNT II
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

84.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

85.     Weyerhaeuser designed, manufactured, and sold the Joists knowing that they would be used in constructing consumers' homes.

86.     Weyerhaeuser was a merchant of the Joists and marketed, promoted, and sold the Joists to the consuming public.

87.     Weyerhaeuser expected the consuming public, including Plaintiffs, to use the Joists to construct their homes and such use was reasonably foreseeable. The Joists sold by Weyerhaeuser were not merchantable at the time Weyerhaeuser sold them.

88.     Weyerhaeuser warranted to the Plaintiffs that the Joists were of a quality that would pass without objection in the trade and were at least fit for the ordinary purposes for which such goods were used, and in all other respects were of merchantable quality.

89.     Plaintiffs relied on that warranty.

90.     Weyerhaeuser breached its implied warranty of merchantability because the Joists were not of merchantable quality and were unfit for the ordinary purposes for which they were designed and were used.

91.     Prior to filing suit, Plaintiffs notified Weyerhaeuser of the defective nature of its Joists and of its breach of the implied warranty of merchantability within a reasonable time of its discovery.

92.     Given the significance of the Joists to the structure of Plaintiffs' home and the homes of Class members – supporting the floors – any limitation of remedies claimed by Weyerhaeuser must fail of its essential purpose in that significant damage to property will occur and the replacement of the Joists cannot be accomplished without considerable consequential cost and expense.

93.     As a result of Weyerhaeuser's breach of its implied warranties, Plaintiffs and the Classes have suffered actual damages, in that they have purchased and installed in their homes and other structures joists that are defective and not at all suitable for their intended purpose. These defects have caused and will continue to cause Plaintiffs and the Classes to expend substantial resources repairing, removing and/or replacing their Joists and addressing any collateral damages to their underlying homes and structures proximately caused by the defective Joists.

94.     Plaintiffs and the Classes reserve their right to seek all damages available by statute or law.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE

95.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

96.     Defendant sold and impliedly warranted the Joists to be fit for the purpose of constructing a home to serve as a residence.

97.     The Joists were not suitable for the purpose because they emitted noxious and toxic gases into Plaintiffs and Class members' homes.

98.     Plaintiffs home used the product in the manner in which it was intended to be used, namely as a floor joist.  This use was reasonably expected by and foreseeable to Defendant.

99.     Plaintiffs relied on Weyerhaeuser's skill and/or judgment to furnish the Joists for use in their home.

100.    Prior to filing suit, Plaintiffs notified Weyerhaeuser of the defective nature of its Joists and of its breach of an implied warranty of fitness for a particular purpose within a reasonable time of its discovery.

101.    Given the significance of the Joists to the structure of Plaintiffs' home-supporting the floors-- any limitation of remedies claimed by Weyerhaeuser must fail of its essential purpose in that significant damage to property will occur and the replacement of the Joists cannot be accomplished without considerable consequential cost and expense.

102.    As a result of Weyerhaeuser's breach of its implied warranties, Plaintiffs and the Class have suffered actual damages, in that they have purchased and installed in their homes and other structures Joists that are defective and not at all suitable for their intended purpose.  These defects have caused and will continue to cause Plaintiffs and the Classes to expend substantial

resources repairing and/or replacing their Joists and to address any collateral damages to their underlying homes and structures proximately caused by the defective Joists.

**COUNT IV**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq*)**

103.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

104.    The Joists are a consumer product as defined in 15 U.S.C. § 2301(1).

105.    Weyerhaeuser is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) & (5).

106.    The warranty that came with the products constitutes a "written warranty" under 15 U.S.C. § 2301(6)(A) and/or (B).

107.    Plaintiffs and the Class members are "consumers" as defined in 15 U.S.C. § 2301(3). They are consumers because: (a) they are buyers of a consumer product; (b) they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty; and (c) they are entitled to enforce a written warranty.

108.    Pursuant to 15 U.S.C. § 2310(e), although Weyerhaeuser is on written notice of the problems with the Joists and Plaintiffs' claims, Plaintiffs and the Classes are entitled to bring this class action and are not required to give Weyerhaeuser notice and opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

109.    Weyerhaeuser is liable to Plaintiffs and the Class members pursuant to 15 U.S.C. § 2310(d)(1), because it breached its written warranties as set forth above.

110.    In connection with its sales of the Joists, Weyerhaeuser gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. As a part of the implied warranty of merchantability, Weyerhaeuser warranted that the Joists, among other things, were fit for their ordinary purpose as a safe building product that complies with all applicable laws and regulations. Weyerhaeuser is liable to Plaintiffs and the Classes pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability as set forth herein.

111.    Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class members are entitled to recover the following damages proximately caused by Weyerhaeuser's breaches of its written warranties and the implied warranty of merchantability: (a) direct economic damages at the point of sale in the amount of the difference in value between the value of the Joists as warranted (the full purchase price) and the value of the Joists as delivered ($0); and (b) consequential economic damages at the point of repair in the form of the cost of repair, replacement and/or removal of the Joists.

112.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the Class members in connection with the commencement and prosecution of this action.

**COUNT V**
**NEGLIGENCE**

113.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

114.    Weyerhaeuser designed, developed, formulated, tested, manufactured and sold Weyerhaeuser's Joists for use and installation in homes and other structures.

115.    Weyerhaeuser was negligent in that it failed to use reasonable care when it designed, developed, formulated, tested, manufactured and sold its Joists.

116.    Weyerhaeuser's Joists are unreasonably dangerous when used in homes and other structures.

117.    Weyerhaeuser owed a duty to the consuming public to design, develop, formulate, test and manufacture a product reasonably free of defect.  Weyerhaeuser further had a duty not to put defective and dangerous products such as its Joists on the market.

118.    At the time Weyerhaeuser was selling its Joists, Weyerhaeuser was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its Joists.

119.    Weyerhaeuser was negligent and breached its duty to the consuming public, including Plaintiffs and Class members, by designing, developing, formulating, testing, manufacturing and selling Weyerhaeuser's Joists that, under ordinary use in consumers' homes, emit noxious and toxic gases.

120.    The injuries sustained by Plaintiffs and members of the Classes could have been reasonably foreseen by Weyerhaeuser.

121.    As a direct and proximate result of Weyerhaeuser's negligent acts and/or omissions, Plaintiffs and members of the Classes have incurred and will incur damages in an amount to be proven at trial.

## COUNT VI
## NEGLIGENT FAILURE TO WARN

122.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

123.    Weyerhaeuser owed a duty to the consuming public to design, develop, formulate, test and manufacture a product reasonably free of defect.

124.    Weyerhaeuser had a duty to disclose to the consuming public the foreseeable risks associated with the use of its Joists.

125.    At the time Weyerhaeuser was selling the Joists, Weyerhaeuser was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its Joists.

126.    Weyerhaeuser was negligent in that it knew or, by the exercise of reasonable care, should have known that Weyerhaeuser's Joists under ordinary use in homes and other structures, might be harmful or injurious to the consuming public, including the Plaintiffs and members of the Classes, but failed to use reasonable care to warn Plaintiffs and members of the Classes and the consuming public of the potentially harmful and injurious effects in the manner that a reasonable person would under the same or similar circumstances.

127.    Weyerhaeuser failed to exercise reasonable care and give adequate warnings or instructions to consumers about the reasonably foreseeable dangers that could result from using Weyerhaeuser's Joists under reasonably foreseeable conditions.

128.    Consumers occupying and/or purchasing homes were not aware of the dangerous nature of the Joists.

129.    When the Plaintiffs bought the home containing the Joists, they were not aware of the dangerous and destructive nature of the Joists and Weyerhaeuser knew or had reason to know that those consumers would not realize the dangerous condition of the Joists.

130.    Due to Weyerhaeuser's failure to provide consumers with adequate warnings or instruction about the dangerous nature of the Joists, Plaintiffs and members of the Classes have

been and will be harmed. Such harm would not have been suffered if Weyerhaeuser provided adequate warnings or instructions.

131.   As a direct and proximate result of Weyerhaeuser's negligent acts and/or omissions, Plaintiffs and members of the Classes have incurred and will incur damages in an amount to be proven at trial.

## COUNT VII
## VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
### (Colo. Rev. Stat. § 6-1-101, *et seq.*)

132.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

133.   The Colorado Consumer Protection Act, Colo Rev. Stat. § 6-1-105, states:

> (1)     A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:
> . . . .
> (e) Knowingly makes false representations as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;
> . . . .
> (g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that the goods are of a particular style or model, if he knows or should know that they are of another.

134.   Weyerhaeuser actively and knowingly misrepresented to and/or omitted from contractors, subcontractors, Plaintiffs and Class members at the time of purchase of the Joists and thereafter, the design, manufacturing, materials and/or workmanship defects of the Joists, and represented that the Joists were merchantable and were not defective.

135.   When the Joists left Weyerhaeuser's control, Weyerhaeuser knew or should have known that they were in defective and dangerous condition and would not perform as warranted by Weyerhaeuser.

136.    Weyerhaeuser's warranty and representations that the Joists were safe and free from defects would influence a reasonable consumer's decision whether to purchase the Joists.

137.    Weyerhaeuser's failure to warn of the defect nature of the Joists was a material omission that would influence a reasonable consumer's decision whether to purchase the Joists.

138.    Weyerhaeuser failed to disclose to Plaintiffs and Class members and/or actively concealed from them that the Joists were and are defective, amounting to a deceptive trade practice under the Colorado Consumer Protection Act.

139.    Contractors, subcontractors, Plaintiffs and Class members relied on the truth of Weyerhaeuser's warranties and representations concerning the Joists, were deceived by the warranties and representations, and suffered damages as result of this reliance and deception.

140.    Weyerhaeuser's conduct has had a significant impact on the public.

141.    Had Plaintiffs and Class members been adequately warned about the fact that the Joists emit noxious and toxic gases, they would have taken steps to avoid damages.

142.    As a direct and proximate result of Weyerhaeuser's false representations, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

## COUNT VIII
## UNJUST ENRICHMENT

143.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

144.    Substantial benefits have been conferred on Weyerhaeuser by Plaintiffs and the Classes by purchasing the Joists, and Weyerhaeuser has knowingly and willingly accepted and enjoyed these benefits.

145.    Weyerhaeuser either knew or should have known that the payments rendered by Plaintiffs and the Classes were given and received with the expectation that the Joists would

perform as represented and warranted. For Weyerhaeuser to retain the benefit of the payments under these circumstances is inequitable.

146.    Weyerhaeuser's acceptance and retention of these benefits under the circumstances make it inequitable for Weyerhaeuser to retain the benefit without payment of the value to the Plaintiffs and the Classes.

147.    Plaintiffs and the Classes are entitled to recover from Weyerhaeuser all amounts wrongfully collected and improperly retained by Weyerhaeuser, plus interest thereon.

148.    As a direct and proximate result of Weyerhaeuser's wrongful conduct and unjust enrichment, Plaintiffs and the Classes are entitled to an accounting, restitution from and institution of a constructive trust disgorging all profits, benefits and other compensation obtained by Weyerhaeuser, plus attorneys' fees, costs and interest thereon.

## COUNT IX
## DECLARATORY JUDGMENT ACT
## (28 U.S.C. § 2201, et seq.)

149.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

150.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

151.    There is an actual controversy between Weyerhaeuser and Plaintiffs concerning:

      a)    whether the Joists are defectively designed;

      b)    whether Weyerhaeuser knew or should have known of the defects; and

      c)    whether Weyerhaeuser failed to warn against the potential unsuitability of its defectively designed and manufactured Joists.

152.     Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

153.     Plaintiffs seek a declaration that the Joists are defective in their design, workmanship, materials, and labeling, as alleged herein. The defective nature of the Joists is material and requires disclosure to all persons who own the Joists or have entered into agreements or contracts to purchase homes containing the Joists.

154.     The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective design, workmanship, materials, and labeling of the Joists and the reasons for their failure. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, respectfully request that the Court grant the following relief:

A.     Enter an Order certifying the proposed Classes, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel;

B.     Declare that Weyerhaeuser must notify all Class members of the problems with the Joists;

C.     Enter an Order enjoining Weyerhaeuser from further deceptive advertising, marketing, distribution, and sales practices with respect to the Joists, and requiring Weyerhaeuser to remove and replace Plaintiffs' and Class members' Joists with suitable alternative joists of Plaintiffs' and Class members' choosing;

D.     Enter an award to Plaintiffs and the Class that includes all actual, compensatory, consequential, ancillary, statutory, exemplary, punitive, or other damages as allowed by Colorado

law or other law, and statutory damages and penalties, including interest thereon, in an amount to be proven at trial;

E.      Declare that Weyerhaeuser must account for and disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of its Joists, or order Weyerhaeuser to make full restitution to Plaintiffs and members of the Classes;

F.      Award pre-judgment and post-judgment interest at the maximum rate allowable by law;

G.      Award reasonable attorneys' fees and reimbursement of costs incurred by Plaintiffs and their counsel in connection with this action; and

H.      Award such other and further injunctive relief, including ongoing monitoring of Class members homes, and medical monitoring, as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs, on behalf of themselves and the members of the proposed Classes, hereby demand trial by jury on all issues so triable.

Dated: August 4, 2017

s/ Shanon J. Carson
Shanon J. Carson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-4656
Facsimile:  (215) 875-4604
Email: scarson@bm.net

*Counsel for Plaintiffs and the Proposed Classes*