IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01900-KLM

ALYSE SMITH, and
RYAN SMITH,
    on behalf of themselves and all others similarly situated,

    Plaintiff,

v.

WEYERHAEUSER COMPANY,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Compel Arbitration and Dismiss or Stay** [#35][1] (the "Motion"). Plaintiffs filed a Response [#37][2] in opposition to the Motion [#35], and Defendant filed a Reply [#44]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#35] is **GRANTED**.[3]

**I. Background**

---

[1] "[#35]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] In the Response [#37], Plaintiffs request oral argument. However, the issues raised by the Motion [#35] have been fully briefed, and oral argument would not materially assist the Court in resolution of this matter. Thus, the Court declines Plaintiffs' request for oral argument.

[3] Pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2(d), the parties in this civil action consented to have the undersigned conduct all proceedings. *See* [#21, #23].

-1-

On May 30, 2017, Plaintiffs purchased and moved into a home in Aurora, Colorado. *Compl.* [#1] ¶ 11. "CalAtlantic built and developed Plaintiff's home, and Plaintiffs entered [into a] Purchase Agreement with CalAtlantic alone." *Response* [#37] at 4. Two months after moving in, CalAtlantic informed Plaintiffs that the joists used in the construction of their home were releasing formaldehyde fumes. *Compl.* [#1] ¶ 14. These joists were located in the unfinished basement of Plaintiffs' recently purchased house. *Id.* ¶¶ 12, 14. Defendant manufactured and supplied the joists to CalAtlantic for use in the construction of Plaintiffs' home. *Id.* ¶¶ 3, 12. CalAtlantic gave Plaintiffs a notice from Defendant that told Plaintiffs "not to use the basement at all," that Plaintiffs should "keep the door between the basement and the rest of the house closed at all times," and that "no workers should be in [the] basement with the Joists for more than five minutes at a time." *Id.* ¶¶ 15, 17. Plaintiffs allege that "[their] daughter . . . has developed a persistent cough," and that "[she] has experienced burning and tearing in her eyes." *Id.* ¶¶ 19-20. Plaintiffs further allege that their home is now uninhabitable and that the home's value has decreased due to the defective joists. *Id.* ¶ 22.

Plaintiffs assert nine causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) breach of implied warranty of fitness for a particular purpose; (4) violation of the Magnuson-Moss Warranty Act; (5) negligence; (6) negligent failure to warn; (7) violation of the Colorado Consumer Protection Act; (8) unjust enrichment; and (9) declaratory relief. *Id.* ¶¶ 63-154. However, Defendant asserts that the purchase and sale agreement ("PSA") that Plaintiffs entered into "includes an unambiguous arbitration provision." *Motion* [#35] at 3. Defendant asserts that the PSA "expressly requires Plaintiffs to arbitrate 'any and all' claims 'arising out of or in any way relating to'

their home," and has therefore filed the present Motion seeking to compel arbitration. *Motion* [#35] at 1, 3 (emphasis omitted). The applicable provision states:

> Any disputes or claims or controversies of any type between buyer (or any representative of buyer acting with respect to buyer's rights, including any homeowners' association) and seller (or any other parties included within the definition of "seller" contained in the dispute resolution agreement addendum to this contract "ADR Addendum")) [sic] arising out of or relating to this contract, the property, or any other matter as described in the ADR Addendum, will be resolved pursuant to the procedures specified in the ADR Addendum. **Under the ADR Addendum, buyer agrees, among other things, to submit such disputes or claims or controversies to binding arbitration and to waive any and all rights to a jury trial.** Buyer and seller each acknowledge that they have read, understand and agree to the terms of this paragraph.

*Attachment* [#44-1] at 2 (emphasis in original).

## II. Standard of Review

"A motion to compel arbitration under the Federal Arbitration Act is governed by a standard similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. Sept. 28, 2005). The party seeking arbitration "must present evidence sufficient to demonstrate an enforceable arbitration agreement." *Id.* "If this is shown, the burden shifts to [the party opposing arbitration] to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.* If the party opposing arbitration raises a genuine issue of material fact, "then a trial on the existence of the arbitration agreement is required." *Id.*

Determining whether to compel arbitration involves a two-step inquiry. *Hickey v. Brinker Int'l Payroll Co.*, No. 13-cv-00951-REB-BNB, 2014 WL 622883, at *1 (D. Colo. Feb. 18, 2014). First it must be determined whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Then,

it must be determined whether any statute or policy renders the claims non-arbitrable. *Hickey*, 2014 WL 622883, at *1. The party seeking to compel arbitration has the burden of showing that the claims are subject to arbitration and "must come forward with evidence sufficient to demonstrate an enforceable arbitration agreement." *Vernon v. Quest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1148 (D. Colo. 2012).

### III. Analysis

### A. Agreement to Arbitrate

Defendant argues that "[it] is entitled to enforce the arbitration provisions of the PSA and the [dispute resolution agreement addendum ("ADR Addendum")] because [it] is a third-party beneficiary to them." *Motion* [#35] at 12. Under Colorado law, "a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if the parties to the contract so intend." *Greenberg v. Porter*, 935 F. Supp. 2d 1094, 1101 (D. Colo. 2013) (quoting *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-cv-02272-WJM-KLM, 2011 WL 2791338, *6 (D. Colo. July 15, 2011)). "The intent to create a third-party beneficiary must be apparent from the terms of the contract or the surrounding circumstances." *Id.* (quoting *Winter Park Real Estate & Invs., Inc. v. Anderson*, 160 P.3d 399, 406 (Colo. App. 2007)). As already stated, the party seeking arbitration "must present evidence sufficient to demonstrate an enforceable arbitration agreement." *Stein*, 396 F. Supp. 2d at 1213.

Plaintiffs do not dispute the existence or the language of the arbitration provision in the PSA. *See Response* [#37] at 2. Rather, Plaintiffs contest whether Defendant falls within the definition of "seller" under the arbitration provision and the ADR Addendum. *Id.* Plaintiffs assert that the PSA they entered into with CalAtlantic "only covers third-party

suppliers like [Defendant] in certain limited circumstances that do not exist here," and therefore contend that the parties did not intend for Defendant to be a third-party beneficiary of the PSA.[4] *Id.* at 1. The Court must look to the terms of the contract in order to determine whether Defendant is a third-party beneficiary. *See Greenberg*, 2011 WL 2791338, at *6.

Defendant has provided, in relevant part, the ADR Addendum to the PSA,[5] which states:

> "Seller" means and includes Seller, any director, officer, partner, member, employee, agent, or representative of Seller, any affiliate of Seller (other than an affiliated mortgage lender) and any contractor, subcontractor, consultant, design professional, engineer, or supplier who provided labor, services or materials to the Project and who is bound or has agreed to be bound to the following dispute notification and resolution procedures.

*Attachment* [#44-1] at 3. According to the Complaint, Defendant manufactured the allegedly defective joists which were "sold and distributed . . . for installation in homes and other structures." [#1] ¶ 3. Defendant's joists were allegedly used by CalAtlantic in the construction of Plaintiffs' home. *Id.* ¶ 12. Based on these allegations, it is clear to the Court that Defendant is a "supplier who provided . . . materials to the Project." *See Attachment* [#44-1] at 3. Therefore, so long as Defendant "is bound or has agreed to be bound to the dispute notification and resolution procedures found in the PSA," it will be considered a "seller" pursuant to the PSA and the arbitration provision. *See id.*

---

[4] Plaintiffs further assert that Defendant's equitable estoppel argument fails because "[n]one of Plaintiffs' claims sound in contract or depend on the underlying contract with their builder." *Response* [#37] at 11. However, the Court finds Defendant's argument that a binding arbitration agreement exists between the parties sufficient to compel arbitration. Therefore, the Court need not address Plaintiffs' arguments as they relate to equitable estoppel.

[5] Plaintiffs do not dispute the language of the ADR Addendum in the Response [#37].

Defendant argues that "[it] and CalAtlantic have their own arbitration agreement, whereby [Defendant] 'agreed to be bound' by the ADR Addendum and PSA that were agreed to and signed by Plaintiffs." *Motion* [#35] at 5. Defendant further provides the relevant arbitration provision of the sales contract between it and CalAtlantic,[6] which states:

> Manufacturer/Supplier and [CalAtlantic] agree that all disputes shall be submitted for resolution by binding arbitration by a single arbitrator to DeMars & Associates pursuant to its Construction Arbitration Program. The arbitration will take place in the county in which the Project is located. If the Dispute involves a third party homeowner, homebuyer, or homeowners' association ("Homeowner") within a [CalAtlantic] Project, Manufacturer/Supplier agrees to and shall comply with and participate in the dispute resolution procedures and provisions which govern disputes between such Homeowner and [CalAtlantic] ("Homeowner Disputes") and shall be required to join such proceedings upon [CalAtlantic's] request.

*Attachment* [#44-1] at 6. Plaintiffs' interpretation of the provision is that "[Defendant] only agreed to proceed in arbitration in the event of a dispute between CalAtlantic and [Defendant] also involving a homeowner." *Response* [#37] at 7-8.

"Under well-settled principles of contract interpretation, the words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided." *Sterling Consulting Corp. v. Credit Managers Ass'n of California*, No. 05-cv-01573-CBS, 2006 WL 3641009, at *4 (D. Colo. Dec. 12, 2006) (quoting *Mgmt. Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 35 (Colo. App. 2004)). Examining the provision according to the plain meaning of the words used, it states that it applies to *all* disputes, rather than expressly restricting the provision to disputes only between Defendant and CalAtlantic. *See id.*

Further, the language in the provision does not restrict its applicability to disputes

---

[6] Plaintiffs do not dispute the language of the sales contract in the Response [#37].

only involving CalAtlantic, as Plaintiffs suggest. *See id.* The second half of the provision states, "[i]f the Dispute involves a third party homeowner, . . . Manufacturer/Supplier agrees to and shall comply with and participate in the dispute resolution procedures and provisions which govern disputes between such Homeowner and [CalAtlantic] *and* shall be required to join such proceedings upon [CalAtlantic's] request." *Attachment* [#44-1] (emphasis added). The requirement in the second clause of the sentence is separate and distinct from the requirement in the first clause. Therefore, Defendant must both comply with the provisions which govern disputes between homeowners and CalAtlantic when it is involved in a dispute with a homeowner, and is required to join any dispute that CalAtlantic is involved in at CalAtlantic's request. Thus, because the clauses create two separate requirements, the Court finds that Defendant did agree to be bound by the dispute notification and resolution procedures found in the PSA.

Upon examination of the terms of the contracts, the Court finds that Defendant is a "seller" for the purposes of the PSA and arbitration provision because it both supplied materials for use in the construction of Plaintiffs' home and because it agreed to be bound by the provisions which also bind Plaintiffs. *See Greenberg*, 2011 WL 2791338, at *6. The Court notes that Plaintiffs do not raise any argument as to the making of the contract. *See Stein*, 396 F. Supp. 2d at 1213. Accordingly, the Court finds that Defendant has presented sufficient evidence to demonstrate that an enforceable arbitration contract exists between the parties.

**B.    Scope of Arbitration Agreement**

The Court next addresses whether any statute or policy renders the claims non-arbitrable. *See Hickey*, 2014 WL 622883, at *1. Specifically, the Court must inquire into

whether Plaintiffs' nine claims for relief are within the scope of the arbitration provision. "As part of the process of determining whether a specific dispute falls within the scope of [an arbitration] clause, [a] court must ascertain the reasonable expectations of the parties by applying the language chosen by the parties for the [arbitration] clause to the factual nature of the dispute." *City & Cty. of Denver v. Dist. Court in & for City & Cty. of Denver*, 939 P.2d 1353, 1364 (Colo. 1997). "In analyzing the factual nature of the claim, the [ ] court must be guided by the underlying factual claims and not the legal causes of action pled." *Id.* Further, "[a] broad or unrestricted arbitration clause makes the strong presumption favoring arbitration [apply] with even greater force." *Id.* (quotations omitted).

Plaintiffs' claims all arise out of the same underlying fact, namely that Defendant supplied allegedly defective joists to CalAtlantic for use in the construction of Plaintiffs' home. *See generally Compl.* [#1]. As already discussed, the arbitration provision applies to "[a]ny disputes or claims or controversies of any type between buyer . . . and seller . . . arising out of or *relating to* this contract, the property or any other matter as described in the ADR Addendum." *Attachment* [#44-1] at 2 (emphasis added). This language indicates that the arbitration provision is intended to be broad. *See GATX v. Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1163 (D. Colo. 2001) (stating that an arbitration agreement phrased to include disputes "'related to' . . . an agreement constitutes a broad arbitration clause."). Viewed through this broad lens, any claim that Defendant provided allegedly defective materials for the construction of Plaintiffs' home is a controversy relating to the PSA and to Plaintiffs' home. Therefore, the Court finds that Plaintiffs' claims are encompassed by the arbitration agreement. *See Hickey*, 2014 WL 622883, at *1.

**C.     Alteration of Terms**

Plaintiffs argue that if the Court grants the Motion [#35], it should also "sever several unfair and improper terms included in the arbitration clause." *Response* [#37] at 18. With regard to modifying arbitration clauses, "[c]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp., PLC v. Republic of Arg.*, 134 S. Ct. 1198, 1207 (2014).

Plaintiffs specifically request: (1) that the Court "mak[e] clear that Colo. Rev. Stat. Ann. § 13–21–102(5) does not apply to any subsequent arbitration;" (2) that the Court "sever the [arbitration] clause's provision on cost-sharing; and (3) that the Court "not appoint DeMars & Associates as the arbitrator." *Response* [#37] at 18-20. With regard to Plaintiffs first two requests, the Court finds that they are procedural in nature, and thus better addressed by the arbitrator. *See BG Grp.*, 134 S. Ct. at 1207. With regard to Plaintiffs' third request, it appears that Plaintiffs seek appointment of a different arbitrator. However, the Court notes that even assuming, arguendo, that selection of the arbitrator is not a procedural precondition, the issue of the selection of an arbitrator is not before the Court in the Motion [#35]. Thus, at this time, the Court need not determine this issue. *See also* D.C.COLO.LCivR 7.1(d) (stating that a "motion shall not be included in a response . . . to the original motion").

**D.    Stay or Dismissal**

Because the arbitration agreement is valid and binding on both parties and because Plaintiffs' claims are encompassed by the arbitration agreement, the next issue to address is whether the case should be stayed or dismissed. Defendant requests that the Court either "stay or dismiss this case." *Motion* [#35] at 20. "Under the [Federal Arbitration Act],

when a district court decides an issue is 'referable to arbitration,' the district court 'shall on application of one of the parties *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'" *Gidding v. Fitz*, No. 17-cv-01334-RM-NYW, 2018 WL 480607, at *14 (D. Colo. Jan. 19, 2018) (quoting 9 U.S.C. § 3) (emphasis added). Thus, this action should be stayed until arbitration concludes. However, given the uncertainty regarding the amount of time it will take to complete arbitration in this matter, this case is eminently well-suited to administrative closure. *See* D.C.COLO.LCivR 41.2. Accordingly, the Court **administratively closes** this case, subject to reopening for good cause.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#35] is **GRANTED**, and the parties are compelled to arbitration.

IT IS FURTHER **ORDERED** that the remaining pending Motions [#36, #42] are **DENIED as moot**.

IT IS FURTHER **ORDERED** that this action is **ADMINISTRATIVELY CLOSED**, subject to reopening for good cause. *See* D.C.COLO.LCivR 41.2.

Dated: August 3, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge